UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RANGER PIPELINES INCORPORATED,

    Plaintiff,

    v.

LEXINGTON INSURANCE COMPANY,

    Defendant.
_____/

No. C 12-5387 PJH

**ORDER GRANTING MOTION TO DISMISS**

Defendant's motion for an order dismissing the first amended complaint ("FAC") in the above-entitled action for failure to state a claim came on for hearing before this court on April 10, 2013. Plaintiff appeared by its counsel Jon Brick, and defendant appeared by its counsel Wayne Glaubinger and Sara Parker. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion.

## BACKGROUND

Defendant Lexington Insurance Company ("Lexington") issued a Master Builder's Risk Policy ("the Policy") to the Regents of the University of California ("Regents") for the period September 1, 2005, through September 1, 2008 (later extended through August 31, 2009), in connection with the construction of the Mission Bay Utilities and Distribution Phase I project at the University of California - San Francisco ("UCSF") Mission Bay campus ("the Mission Bay Project" or "the Project").

The Regents entered into contracts with various design professionals and contractors for the design and construction of the Project. On September 27, 2007, the Regents and plaintiff Ranger Pipelines Incorporated ("Ranger") entered into a contract pursuant to which Ranger agreed to build the utility pipe and vault system for the Project. There appears to be no dispute that Ranger is an additional insured under the Policy based on its contract with the Regents, or that the Policy provided coverage to Ranger for property damage related to construction undertaken on behalf of the Regents.

Ranger alleges that it had completed most of its work by December 12, 2008, when the Regents issued a second notice of substantial completion and partially operated the incomplete system. However, Ranger asserts, the Regents have not issued a certificate of final completion as required by the contract.

On February 23, 2009, the Regents reported that water had entered into and damaged portions of the Project, including portions installed by Ranger. Ranger claims that the water entered the system because of the negligence of the Regents and others. Among other things, Ranger alleges that the Regents caused the piping system to be operated at temperatures that were higher than was appropriate, at a time when the system was incomplete in that it did not yet include the required sensors and alarms. Ranger also asserts that the water entered the system because of negligent design and/or construction by "persons or entities" other than Ranger.

Section 25 of the Policy provides, in part, that "[a]ny action or proceeding against the Company for recovery of any loss under this Policy will not be barred if commenced within (12) months after the OCCURRENCE becomes known to the Insured unless a longer period of time is provided by applicable statute." The Policy defines "Occurrence" as "any one loss, disaster, casualty, accident, incident, or series of one or more of the following arising out of a single event or originating cause during the Policy term and including all resultant or concomitant losses wherever located."

At some point after discovering the damage in February 2009, the Regents tendered a claim to Lexington. Ranger did not receive a copy of the claim, and does not know the

2

exact date the Regents submitted the claim to Lexington. Ranger learned on April 20, 2009 that the Regents would be submitting a claim to Lexington under the Policy, when an associate director of the Regents requested that Ranger attend a meeting on April 21, 2009 to discuss the scope of apparent repair work with the Lexington claims adjuster.

According to Ranger, the associate director stated, among other things, that the Regents was filing a claim for "water damage" and "high heat damage," and further stated that the Regents would not be seeking the $25,000 policy deductible from Ranger, as the Regents did not believe that the "water damage" or "high heat damage" problems were related to Ranger's actions.

Ranger asserts that following the April 21, 2009 meeting, it attended various meetings with the Regents, Lexington, and other contractors for a period of several months. During those meetings, according to Ranger, representatives of the Regents and Lexington indicated that they were working together to resolve the claims; and no one ever indicated to Ranger that any claim was being made against it. Ranger asserts that it "was expressly led to believe" that no such claim was being made, and that it "was advised" that Lexington and/or the Regents had concluded that the issue was fundamentally a design issue. Ranger alleges that it became aware that during these meetings the designer was fired from the Project.

Ranger asserts that early in the investigation of the damages, the Regents stated that it would advise Ranger if it found anything implicating Ranger's work. However, according to Ranger, the Regents did not indicate that it had found anything that implicated Ranger's work, and indeed, requested that Ranger assist in assessing the damage. Ranger and the Regents subsequently entered into three remediation contracts, one of which was for Ranger to provide support to the forensics investigator retained by Lexington to investigate the claim. Ranger alleges that it completed all work set forth in the three remediation contracts, and that it was paid for the work it performed, including the work on a $15.5 million contract to repair and upgrade the damaged system.

After completing the investigation of the Regents' claim – which Ranger alleges was

3

in excess of $35 million – Lexington determined there was coverage, and paid the Regents a sum of money under the Policy. However, Ranger alleges, instead of paying the Policy limit of $28 million, Lexington paid the Regents only $5 million.

On February 17, 2012, the Regents filed suit in San Francisco Superior Court against Ranger and other defendants, seeking to recover for the damage to the Project. See The Regents of the Univ. of Calif. v. RMF Eng'ng, Inc., et al., No. CGC-12-518341 (S.F. Sup. Ct.). Ranger was served with the summons and complaint on February 29, 2012. Ranger alleges that it was on that date that it learned for the first time that the Regents was seeking compensation from it for the water damage that had been discovered in February 2009.

Ranger claims that prior to that date, the Regents had given no hint that it was planning on seeking compensation from Ranger. In Ranger's view, the Regents is trying to get money from Ranger to make up for the fact that Lexington agreed to pay the Regents only $5 million under the Master Policy (not enough to compensate for the damage), rather than the policy limit of $28 million.

Ranger asserts that it was included as one of the "additional insureds" in the claim submitted by the Regents to Lexington, between February 24, 2009 through April 21, 2009, and that after it learned that Lexington had not fully paid all claims for the damage to the Project, it submitted its own claim to Lexington on March 28, 2012. That claim was rejected by Lexington on the basis that Ranger's status as an additional insured did not give it standing to submit a notice of loss independently of the Regents.

In its rejection of Ranger's claim, Lexington quoted the following Policy language:

> The first Named Insured shall be deemed the sole and irrevocable agent of each and every Insured for the purpose of giving and receiving notices to/from the Company, giving instructions to or agreeing with the Company as respects policy alteration and for making or receiving payment of premiums or adjustment of premium.

Lexington informed Ranger that "[u]nder these unequivocal terms, the Regents are the sole proxy for all insureds and Lexington Insurance Company is authorized to deal only with the Regents." Lexington added that the Policy "includes equally definitive language with

4

respect to notices of claims and loss and delegates this function to the first named insured, the Regents of the University of California, to the exclusion of any other insureds."

Ranger filed the present action in September 2012. Lexington moved to dismiss, arguing that the action was time-barred, under the one-year limitation period in the Policy. In response, Ranger asserted that the limitations period was equitably tolled. The court granted the motion, with leave to amend. The court found that the only question for determination was whether the one-year period should be equitably tolled, but also found that the complaint was lacking in specific details and did not allege facts sufficient to support Ranger's claim of equitable tolling. The court specified a list of factual allegations that must be included in any amended complaint.

On February 6, 2013, Ranger filed the FAC, asserting causes of action for breach of contract, breach of the implied covenant, and declaratory relief. Lexington now seeks an order dismissing the FAC for failure to state a claim.

**DISCUSSION**

A. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8.

Rule 8(a)(2) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

All allegations of material fact are taken as true. Id. at 94. However, legally conclusory statements, not supported by actual factual allegations, need not be accepted.

5

See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  A plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face.  See id. at 558-59.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679.

B.  Defendant's Motion

Lexington argues that the FAC should be dismissed because it does not include the minimum allegations required by the court; and because the action is barred by the one-year suit limitation provision, which runs from the date the loss was discovered, and not when Ranger thought it might be liable to the Regents for the water damage.  In addition, Lexington contends that Ranger's claim is not equitably tolled, and that Lexington cannot be equitably estopped from asserting the one-year limitation provision.

In opposition, Ranger argues that the FAC pleads facts sufficient to comply with the court's order; that the one-year suit limitation provision does not apply in this case; that the doctrine of equitable tolling applies to the claims; and that Lexington is equitably estopped from asserting a statute of limitations defense.

Lexington first argues that the FAC does not include the minimum allegations required by the court.  Specifically, Lexington asserts that the FAC fails to allege what the Regents' claim covered.  According to Lexington, Ranger "would most certainly" have a copy of the insurance claim or detailed information concerning the claim if in fact the Regents had actually made a claim on behalf of Ranger.  Lexington also contends that the FAC is deficient because it does not allege what portion, if any, of the claim submitted by the Regents to Lexington related to Ranger's insurance claim.  According to Lexington,

6

"[t]his omission is not unintentional because it is plain that the Regents never filed an insurance claim on Ranger's behalf."

In response, Ranger argues that the FAC includes all the allegations required by the court. Ranger also contends that any inference that Ranger "would most certainly have a copy of the insurance claim" if it included damage to property installed by Ranger but not accepted by the Regents would be improper, given the other allegations of the FAC – including that the Regents told Ranger it did not believe Ranger was responsible for the damage, and that in numerous meetings neither the Regents nor Lexington ever advised Ranger that the claim submitted by the Regents did not include all of the alleged property damage or that Ranger should submit a claim on its own.

In its second argument, Lexington contends that the action is barred by the one-year suit limitation provision contained in both the Lexington policy and California Insurance Code § 2071. Lexington argues that under California law, the one-year period begins to run on the date the damage occurs or is (or should be) known to the insured. Here, Lexington asserts, the FAC alleges that the damage to the Project was discovered on February 23, 2009, and thus, any action under the policy would have had to commence by February 23, 2010. However, Ranger did not file the present action until September 11, 2012.

Lexington argues further that the one-year suit limitation provision runs from the date the loss was discovered, and not when Ranger thought it might be liable to the Regents for the water damage. Thus, Lexington asserts, any contention by Ranger that it did not think it was liable until it was sued (or had a claim brought against it) by the Regents in February is not a ground for excluding the suit limitations period. Lexington argues that by the time Ranger submitted its claim to Lexington, the claim was already time-barred, and thus any discussion of the tolling of the limitation period is irrelevant.

In response, Ranger contends that the one-year suit limitation provision does not apply in this case. Ranger contends that there is no dispute that Lexington received notice of the damage in April of 2009, within two months of when it was first observed. Ranger

7

argues that because the Policy provides that the Regents is "deemed the sole and irrevocable agent of each and every insured hereunder for the purpose of giving and receiving notices to/from the company," Policy, at 4, § 1.B, the notice provided to Lexington must be read to include notice of any claim that Ranger may have had.

Ranger claims that it was also informed that the Regents had filed a claim with Lexington for "water damage" and "high heat damage," and was specifically informed that the Regents would not be seeking the $25,000 policy deductible because it did not believe that the damage was the result of Ranger's work. Ranger asserts that at no time during the numerous meetings it attended with representatives of the Regents and Lexington did anyone indicate that the Regents had submitted a limited claim or that Lexington did not believe that any claims had been submitted on behalf of Ranger.

In its third main argument, Lexington asserts that Ranger's claim should not be equitably tolled. Lexington contends that California courts have recognized that the one-year suit limitation provision will be tolled during the time period the insurer is investigating a submitted claim – but that the claim must have been timely submitted. Here, however, the claim was submitted two years after the one-year period had run, and thus Lexington argues that tolling does not apply.

In addition, Lexington argues that the fact that Ranger alleges it was not provided with a copy of the claim submitted to Lexington by the Regents is significant, because the FAC does not allege that any claim was made by the Regents to Lexington on Ranger's behalf – and because if a claim had been made on Ranger's behalf, surely Ranger would have known the date of the claim and the subject of the claim, would have had a copy of the claim.

Lexington adds that even if it were true that the Regents' claim was submitted on behalf of Ranger, Lexington advised the Regents in December 2010 that it was paying only $5.537 million for the water damage claim as a full and final payment of all sums owed under the Policy. Thus, Lexington asserts, even if the Regents claim was made on behalf of Ranger, that claim is fully paid, with the remainder being denied as of December 2010.

8

Because the water damage was discovered by the Regents on February 23, 2009, and the claim was submitted by the Regents to Lexington on April 21, 2009, Lexington contends that two months of the 12-month limitation period had already expired by the time the Regents submitted the claim. Lexington adds that because it resolved the claim on December 16, 2010, only 10 months remained on the suit limitation period, and Ranger would have had to file suit by October 16, 2011 in order to be timely.

In response, Ranger argues that the doctrine of equitable tolling applies in this case. Ranger notes that under California law, where an insurer has timely notice of a claim, the one-year suit provision is tolled from the time an insured gives notice of the damage to the insurer, pursuant to applicable policy notice provisions, until coverage is denied. Here, Ranger asserts, although Lexington was on notice of the claim, it never advised Ranger that it was denying coverage to it as an additional insured under the policy. Ranger contends that application of the one-year period would have required Ranger to file a lawsuit before Lexington even denied the claim.

Ranger asserts that Lexington was provided with notice of the claim by Ranger's agent – the Regents – in April 2009, and that Lexington investigated the claim, and paid a portion of the claim to the Regents. However, at no time did Lexington advise Ranger that it was denying any of Ranger's claims. Thus, Ranger's view is that the time to file suit was tolled from the time Lexington received notice in April 2009 until Lexington denied Ranger's separate claim in April of 2012. Based on this, Ranger contends that this lawsuit, which was filed in September 2012, is timely.

Ranger asserts that because Lexington has taken the position that only the Regents could submit a claim for property damage under the Policy, and because Ranger believed (based on conversations with representatives of the Regents and Lexington) that a claim had been submitted that included all property damage and that Lexington was investigating the claim, and because Ranger was never told that the claim submitted by the Regents did not include the property installed by Ranger, Lexington is not now entitled to argue that Ranger's claim is time-barred.

9

Ranger argues that if – as Lexington seems to agree – the Regents is the agent for all insured for purposes of submitting a claim, then the claim submitted by the Regents must be a claim for all property damage, including property installed by Ranger but not yet accepted by the Regents. Ranger asserts that it was not required to file a claim until it was informed that only a portion of the claim submitted by the Regents had been paid and the Regents was looking to Ranger to pay a portion of the remainder – and thus, the doctrine of equitable tolling applies and Ranger's suit was timely.

Ranger asserts further that the December 16, 2010 date of Lexington's partial payment to the Regents cannot control the tolling period, as that date is not pled in the FAC, but rather is based on a declaration filed by Lexington. In addition, Ranger contends that Lexington is improperly asking the court to make assumptions that are not based on facts pled in the FAC – that Ranger was aware of the negotiations between the Regents and Lexington, that Ranger was provided with a copy of Lexington's explanation of its payment, that Ranger was informed that the Regents were not accepting Lexington's payment as full payment for all damages, and that Ranger was aware that the Regents would look to Ranger for payment of the claims that were not paid by Lexington.

In its fourth main argument, Lexington contends that it cannot be equitably estopped from asserting the suit limitation provision. Lexington argues that while Ranger may have been misled by the Regents into believing that the Regents would not seek to recover from Ranger, the FAC does not allege or even suggest that Lexington misled Ranger into believing that it was investigating a claim submitted by Ranger, but alleges only that if Lexington had told Ranger it was going to resolve only a small part of the claim made by the Regents, Ranger would have taken action sooner. However, Lexington asserts, it had no duty to apprise Ranger of the adjustment of a claim brought by the Regents.

Moreover, Lexington argues, there are no allegations in the FAC that Lexington did or did not do something that caused Ranger to refrain from filing suit within the one-year period. Lexington contends that the fact that Ranger was under the impression that Lexington was going to pay more to the Regents than it actually did does not amount to a

10

showing that there were any actions or inactions by Lexington relied upon by Ranger that could justify its late filing of this lawsuit.

In response, Ranger asserts that as an "additional insured" under the Policy, it was owed a duty by Lexington. Ranger also claims that it attended meetings with representatives of the Regents and Lexington, and was led to believe that the claim was being investigated and processed by Lexington. Ranger contends that if it is true, as Lexington claims, that "everyone knew" that the claim was submitted solely on behalf of the Regents, then Lexington had a duty to advise Ranger that it needed to submit its own claim.

Ranger contends that Lexington cannot take the position that it owed no duty to Ranger. In support, Ranger cites Spray, Gould & Bowers v. Associated Int'l Ins. Co., 71 Cal. App. 4th 1260 (1999), where the court held that an estoppel may arise from silence where there is a duty to speak and the party charged with that duty has an opportunity to speak but, knowing that the circumstances require him to speak, remains silent. Id. at 1268. The court noted that one-year suit limitation provisions in insurance policies are generally valid, but found that a regulation requiring insurers to disclose time limits to claimant insureds created a duty to speak which the insured could use to support its claim that the insurer was equitably estopped from relying on the limitation provision. See id. at 1267-69 (citing tit. 10 C.C.R. § 2695.4).

The court has considered the above arguments and the authority cited by the parties, and finds that the motion must be GRANTED. While the court does not agree with Lexington that Ranger failed to comply with the court's order regarding amending the complaint, the court nevertheless finds that the complaint must be dismissed because Ranger's claims are time-barred by the one-year suit limitation provision contained in both the Lexington policy and California Insurance Code § 2071. See, e.g., Zurn Engineers v. Eagle Star Ins. Co., 61 Cal. App. 3d 493, 495 (1976). The Regents submitted a timely claim, a portion of which was accepted and a portion of which was denied, and then more than three years after the Regents submitted its notice of loss, Ranger filed the present

11

lawsuit. The suit is therefore time-barred under the limitation provision in the Policy.

Under California law, the one-year period begins to run on the date the loss becomes manifest – "when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered." See Prudential-LMI Comm'l Ins. v. Superior Ct., 51 Cal. 3d 674, 686-87 (1990); Kapsimallis v. Allstate Ins. Co., 104 Cal. App. 4th 667, 673 (2002). Here, Lexington asserts, because (according to the allegations in the FAC) the damage to the Project was discovered on February 23, 2009, any action under the policy would have had to commence by February 23, 2010. However, Ranger did not file the present action until September 11, 2012.

Moreover, the one-year suit limitation provision runs from the date the loss was discovered, and not when Ranger thought it might be liable to the Regents for the water damage. See Sullivan v. Allstate Ins. Co., 964 F.Supp 1407, 1412-13 (C.D. Cal. 1997). Thus, Ranger's belief that it was not liable until it was sued (or had a claim brought against it) by the Regents in February 2012 does not provide a basis for excluding the suit limitations period. By the time Ranger submitted its claim to Lexington, the claim was already time-barred.

The court finds further that neither the doctrine of equitable tolling nor the doctrine of equitable estoppel applies in this case. "Equitable tolling" as traditionally understood is applied to situations where an injured party has several legal remedies, and reasonably and in good faith, pursues one instead of another. Elkins v. Derby, 12 Cal. 3d 410, 414 (1974). In general, "equitable tolling" of a statute of limitations requires that the party seeking the tolling satisfy three elements – (1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and, (3) good faith and reasonable conduct by the plaintiff in filing the second claim. Aguilera v. Heiman, 174 Cal. App. 4th 590, 598-99 (2009).

In Prudential-LMI, the California Supreme Court recognized and applied the theory of equitable tolling in a first-party progressive property damage claim made under a

homeowner's insurance policy.  The court found that the "limitation period [is] equitably tolled from the time the insured files a timely notice, pursuant to policy notice provisions, to the time the insurer formally denies the claim in writing."  Id., 51 Cal. 3d at 678.  In other words, if the insured files a timely claim, he/she/it cannot lose the right to sue just because the insurer takes more than a year to investigate the claim and resolve it.

The court finds, however, that the facts pled in the FAC are not sufficient to establish that equitable tolling should apply.  Equitable tolling cannot apply if Ranger first submitted a claim to Lexington after the one-year period had expired.  Assuming that the first time Ranger submitted a claim on its own behalf was in March 2012, the submission of that claim could not toll the one-year period because by that time the one-year period had expired.

Ranger's position appears to be that the claim filed by the Regents was necessarily filed on behalf of Ranger (and presumably all other additional insureds under the Policy), and therefore was timely, and that because Ranger did not know until February 2012 that the Regents intended to seek recovery from Ranger, the time to file the lawsuit was tolled until that point.

However, had the Regents submitted a claim to Lexington on Ranger's behalf in April 2009, there would have been no reason for Ranger to resubmit the claim in March 2012, which in any event was well after Lexington had denied a large portion of the Regents' claim.  And if, as Ranger argues, the claim submitted by the Regents was a claim on Ranger's behalf, then Lexington's notification of the denial of the claim to the Regents (which date is not pled in the FAC) would have constituted notification to Ranger as well, and the present action would still be time-barred.

The Regents' notice of loss in April 2009 did not toll the suit limitation period as to Ranger, because the Regents' claim was not made on behalf of Ranger.  The Policy identifies the Regents as the "Named Insured," and states that the Named Insured "shall be deemed the sole and irrevocable agent of each and every Insured hereunder for the purpose of giving and receiving notices to/from the Company, . . ."  This provision makes

clear that the Regents, the entity that paid for the policy, is the proper entity to pay premiums, receive adjustments on premiums, and give notices to or receive notices from Lexington.

As for the argument that Lexington took the position that Ranger was prohibited from filing its own claim, it appears from the facts as pled that all Lexington did was advise Ranger that the Regents is "the sole proxy for all insureds," and that Lexington was authorized to deal only with the Regents. This does not mean that Ranger was precluded from submitting its own claim – just that Ranger was required to submit its notice of claim to the Regents, which would then report to Lexington regarding the substance of the claim. Lexington would then work with the Regents (its named insured) to adjust any claim submitted by Ranger.

The doctrine of equitable estoppel is also inapplicable here. Equitable estoppel is distinct from equitable tolling. California courts have long recognized the doctrine under which a defendant may be estopped from raising a statute of limitations defense where the defendant's conduct induced the plaintiff to forego bringing a timely action. See 3 Witkin, Cal. Procedure, Actions § 761 (5th ed. 2012). It may even be available where equitable tolling does not exist. Id.

> Tolling . . . is concerned with the point at which the limitations period begins to run and with the circumstances in which the running of the limitations period may be suspended. . . . Equitable estoppel, however, . . . addresses itself to the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period. . . . [The doctrine] takes its life . . . from the equitable principle that no man will be permitted to profit from his own wrongdoing in a court of justice.

Battuello v. Battuello, 64 Cal. App. 4th 842, 847-848 (1998) (citation omitted); see also Cordova v. 21st Century Ins. Co., 129 Cal. App. 4th 89, 96 (2005).

Under California law, an insurer may be estopped to assert a policy provision limiting the time to sue where it has caused the insured to delay filing suit until after the expiration of the time period. Ashou v. Liberty Mut. Fire Ins. Co., 138 Cal. App. 4th 748, 766 (2006); see also Doheny Park Terrace Homeowners Ass'n, Inc. v. Truck Ins. Exch., 132 Cal. App.

4th 1076, 1090 (2005).

To establish equitable estoppel, the insured must show (a) that the party to be estopped (here, Lexington) knew all the facts, (b) that the party intended that its conduct be acted upon or must act in such a way that the party asserting the estoppel had the right to believe it was so intended; (c) that the party asserting the estoppel was ignorant of the true state of facts; and (d) that the party asserting the estoppel relied on the conduct to his injury. Ashou, 138 Cal. App. 4th at 766-67. That is, there must be some conduct of the defendant, relied upon by the plaintiff, which induces the belated filing of the action. Prudential-LMI, 51 Cal. 3d at 689-91.

In California, an alternative basis for equitable estoppel exists. "Insurers are required by the relevant regulations . . . to notify a claimant of any applicable time limits that might apply to the claim. Unless it can be shown that the claimant in fact had actual knowledge of it, the insurer may be estopped to assert any time limit as to which the required notification was not given." Doheny Park, 132 Cal. App. 4th at 1091.

Even where the insurer has no intention to deceive the insured, an equitable estoppel may arise if the insured reasonably is induced by the insurer's misrepresentation of fact to refrain from taking action that would preserve its claim. See Vu v. Prudential Property & Cas. Ins. Co., 26 Cal. 4th 1142, 1152-54 (2001). That is, the defendant's statement or conduct must amount to a misrepresentation bearing on the necessity of bringing a timely suit – the mere denial of legal liability does not set up an estoppel. Id.

Here, however, Ranger's arguments do not support the application of estoppel. Ranger contends that it was led to believe that a claim for "property damage" had been made and that the claim was being investigated by Lexington; that it reasonably believed, based on the actions and statements of the Regents and Lexington, that all claims for water damage had been submitted and were being investigated and adjusted; that it understood or was led to believe that the initial claim submitted by the Regents was for all property damage at the Project, including damage to the property installed by Ranger, and that it was led to believe that Lexington was going to fully resolve the claim for property

damage.

Nevertheless, whether or not the Regents' claim was for all property damage, including the damage to the property installed by Ranger, the fact remains that the claim was the Regents' – not Ranger's – and while the Regents may have submitted a claim for damage to property installed by Ranger, that claim cannot be transformed into a claim submitted by Ranger. Ranger's belief that the Regents would not hold Ranger responsible, or Ranger's belief that Lexington would pay the Regents more than it actually agreed to pay ($5 million) does not support the application of the doctrine of equitable estoppel, because there is no allegation in the FAC that Lexington caused Ranger to delay filing suit against Lexington.

Further, the event that triggered Ranger's decision to submit a claim to Lexington in March 2012 was the Regents' filing of the lawsuit in San Francisco Superior Court in February 2012. There are no facts pled showing that Lexington had any reason to anticipate the Ranger would at some point, three years after the water damage had occurred, consider itself a "claimant" to which Lexington owed a duty.

The Spray decision stands for the proposition that under tit. 10 C.C.R. § 2695.4(a), an insurer shall disclose to a "first party claimant" all time limits of any insurance policy that the insurer may apply to the claim presented by the claimant. Id., 71 Cal. App. 4th at 1269. Nevertheless, the court in that case did not hold that an insurer has a duty to disclose time limits to every insured, even if that insured has not presented a claim – and in fact, did hold that "mere silence will not create an estoppel, unless there is a duty to speak." Id. at 1268.

Ranger has cited no authority for the proposition that where a party is an additional insured, but has not submitted a claim (and thus was not a claimant at the relevant time), the insurer has an obligation to advise the party to submit a claim and/or file suit before the expiration of the one-year period. Nor has Ranger pointed to anything that Lexington did or did not do, or did or did not say, that prevented Ranger from bringing suit within the one-year limitation period. If anything, Ranger's dispute is with the Regents – not with Lexington.

**CONCLUSION**

In accordance with the foregoing, Lexington's motion to dismiss the FAC is GRANTED. Because the court finds that Ranger's claims are time-barred, the dismissal is with prejudice.

**IT IS SO ORDERED.**

Dated: April 29, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge